**Soroya SHARIF, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 95–2695.

United States Court of Appeals, Seventh Circuit.

Argued May 16, 1996.

Decided July 3, 1996.

Lawrence Alberg (argued), Reza Baniassadi, Chicago, IL, for petitioner.

Janet Reno, U.S. Atty. Gen., Office of the U.S. Atty. Gen., Washington, DC, Samuel Der-Yeghiayan, I.N.S., Chicago, IL, James B. Burns, Office of the U.S. Atty., Chicago, IL, William J. Howard, David M. McConnell, Ellen Shapiro, Marion E. Guyton, Papu Sandhu (argued), Dept. of Justice, Civ. Div., Immigration Litigation, Washington, DC, for respondent.

Before POSNER, Chief Judge, and ESCHBACH and ROVNER, Circuit Judges.

ESCHBACH, Circuit Judge.

Soroya Sharif petitions this court to overturn a decision of the Board of Immigration Appeals denying her claims for asylum and withholding of deportation. Sharif argues that if she returns to her home country of

Iran she will be persecuted because of her family and her status as a "westernized woman." We conclude that the BIA's decision was supported by substantial evidence, and deny Sharif's petition.

## I.

Sharif is a native and citizen of Iran. Her father was a wealthy automobile dealer in Iran, and "follower" of the Shah, prior to the Islamic revolution in 1979. After the revolution, Sharif's father was forced to forfeit some of his wealth. By divorcing Sharif's mother, Sharif's father was able to salvage some of the family's assets, including the family villa.[1] Her father was never physically harmed or arrested. Sharif's mother lives in the family villa in Tehran, Iran to this day.

Sharif lived in Iran after the revolution relatively without incident. Although she claims that she has always harbored "pro-western" beliefs, she lived in Iran in complete conformity with the Iranian fundamentalists' social code. She never professed western ideas or objected to the fundamentalist regime.

Sharif once was stopped briefly because authorities believed she was "mixing" with a man who was not her husband. When she produced a copy of her marriage certificate demonstrating that the man was, in fact, her husband, Sharif was released without harm. Sharif's home was once the subject of government surveillance. However, the surveillance was a security precaution taken by the government because Sharif's home was located "close to where Khomeni was living," not because the home was occupied by Sharif.

Sharif was unable to attend college because the Khomeni government reserved seventy percent of the enrollment for members of the Hezbollah party (of which Sharif is not a member).[2] She also lost her job at a company in Iran when the company was taken over by the government. However, she found another job teaching private school.

Since the revolution, most of Sharif's family has lived in Iran without significant hardship. The family sustains itself by growing and selling agricultural products. Sharif claims that her father remains "in hiding" from the Iranian government. However, her mother and uncle live in Iran free from governmental oppression. The family villa was seized briefly in 1993, but an Iranian court promptly ordered the villa returned to Sharif's mother.

In 1990, at the age of 30, Sharif sought and obtained an Iranian passport to come to the United States. When her passport expired the first time, Sharif received considerable assistance from the Iranian consulate in Washington, D.C. to extend her stay. On October 3, 1991, her passport again expired, but she remained in the United States. The INS commenced deportation proceedings against her in 1994. Sharif conceded deportability, but claimed that she is entitled to asylum or withholding of deportation because she wanted "freedom."

An Immigration Judge made quick work of Sharif's case, denying her claims for asylum and withholding of deportation. Reviewing the IJ's decision *de novo*, the BIA affirmed. Sharif now brings this timely appeal. We have jurisdiction pursuant to 8 U.S.C. § 1105(a).

## II.

 When the BIA's decision is supported by substantial evidence, it must be upheld. *Milosevic v. INS*, 18 F.3d 366, 370 (7th Cir.1994). In other words, we will grant a petition to review the BIA's deportation order only if no reasonable fact-finder could fail to find the requisite fear of persecution. *Id.* We conclude that the BIA's ruling was reasonable, and deny Sharif's petition.

 Eligibility for withholding of deportation requires a demonstration of a clear probability of persecution on account of race, religion, nationality, political opinion, or membership in a defined social group. *INS v. Stevic*, 467 U.S. 407, 424, 104 S.Ct. 2489,

---

1. It is unclear from the record how the divorce enabled the family to retain its assets.

2. The record does not reveal why Sharif could not qualify for one of the spots available to the remainder of the population.

2498, 81 L.Ed.2d 321 (1984). To qualify for asylum, Sharif must prove that she is a refugee. *Milosevic*, 18 F.3d at 370. "Refugee" is defined as someone who is unwilling to return to her country because she suffered from past persecution, or because she harbors a well-founded fear of persecution, on account of race, religion, nationality, political opinion, or membership in a defined social group. 8 U.S.C. § 1101(a)(42); *See Milosevic*, 18 F.3d at 370. The "well-founded-fear" burden for demonstrating asylum eligibility is less onerous than the "clear-probability" burden for withholding deportation. *INS v. Cardoza–Fonseca*, 480 U.S. 421, 425, 107 S.Ct. 1207, 1209, 94 L.Ed.2d 434 (1987); *Stevic*, 467 U.S. at 424, 104 S.Ct. at 2498. Because Sharif fails to establish asylum eligibility, we will address only her asylum claim.

## A. Persecution.

 As a preliminary matter, we note that Sharif has offered virtually no evidence of past persecution. "[P]ersecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Fatin v. INS*, 12 F.3d 1233, 1240 (3rd Cir.1993). On the contrary, in order to be an act of persecution, the behavior in question must threaten death, imprisonment, or the infliction of substantial harm or suffering. *Matter of Acosta*, 19 I. & N. Dec. 211, 222 (BIA 1985). The act need not be life-threatening to equal persecution. *See, e.g., Desir v. Ilchert*, 840 F.2d 723, 729 (9th Cir.1988). Torture qualifies as persecution. So too does economic deprivation when the resulting conditions are sufficiently severe. *Acosta*, 19 I. & N. Dec. at 222. However, harsh conditions shared by an entire population do not amount to persecution. Nor does punishment which results from violating a country's laws of general applicability, absent some showing that the punishment is being administered for a nefarious purpose. *Id.*

 The facts of this case demonstrate that the Iranian government's treatment of Sharif did not constitute persecution. Sharif lived in Iran for many years free from harm. Although she lost her job, she found another. Her economic circumstance never amounted to persecution. *Cf. Zalega v. INS*, 916 F.2d 1257, 1260 (7th Cir.1990) (holding that one's inability to obtain his preferred government job is not sufficient evidence to establish persecution). She was detained once, briefly, but never imprisoned. And, she travelled to the United States freely, and remained here with the permission and assistance of the Iranian government.

## B. A well-founded fear of future persecution.

 The only avenue left open to Sharif is to show that she has a well-founded fear of being persecuted if she returns to Iran. Our court has established that Sharif must meet two burdens in order to establish a well-founded fear of persecution. First, Sharif must show both that she subjectively fears persecution, and that her fear is objectively reasonable. *Mitev v. INS*, 67 F.3d 1325, 1331 (7th Cir.1995). Then, she must show that the persecution in question stems from one of five enumerated motives. 8 U.S.C. § 1101(a)(42). Merely alleging a fear of future persecution is not enough. "[T]his court has consistently held that in order to demonstrate a well-founded fear, a petitioner must present specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution." *Zulbeari v. INS*, 963 F.2d 999, 1000 (7th Cir.1992).

 Sharif has failed to show a reasonable fear of persecution. Although few "pro-western" persons would relish the idea of living in accord with Iran's conservative social mores, living in accord with conservative social mores is not equivalent to persecution per se. Sharif has offered no evidence to suggest that conforming to Iranian law is tantamount to torture. Rather, Sharif has demonstrated that she is perfectly willing and able to live in conformity with Iranian law; she did so for eleven years. Most of Sharif's immediate family lives in Iran safely, with the blessing of the government. In fact, rather than persecuting Sharif, the Iranian government occasionally has been cooperative.

A brief review of our case law affirming BIA decisions to deny asylum highlights the weakness of Sharif's claim. In *Balazoski v.*

*INS,* 932 F.2d 638 (7th Cir.1991), we considered the appeal of an alien, Hasan Balazoski, who was attempting to avoid returning to Yugoslavia. *Id.* at 641. Balazoski was a professed supporter of Albanian nationalism while he lived in Yugoslavia. *Id.* Balazoski's niece was shot for her participation in anti-government protests. *Id.* Balazoski himself had taken part in protests for Albanian independence, and was questioned by Yugoslavian officials regarding his political beliefs. *Id.* Nonetheless, we upheld the BIA's determination that Balazoski lacked a well-founded fear of persecution, concluding that Balazoski had failed to present "evidence sufficient to establish that his political activities were of a magnitude or frequency to cause a reasonable person to fear persecution." *Id.* Viewed in the light of our conclusion regarding Balazoski, Sharif's basis for fearing persecution, if such a fear even exists, is scant at best.

■ Similarly, it is clear that even if we assume arguendo that Sharif reasonably fears persecution, the persecution she fears would not stem from any of the motives set forth in 8 U.S.C. § 1101(a)(42). Sharif bases her claim for asylum on her membership in either one of two social groups: her family and all "westernized" women. To qualify for asylum based on group membership, an alien must: 1) identify a particular social group; 2) establish that she is a member of that group; and, 3) establish that her well-founded fear of persecution is based on her membership in that group. *Fatin,* 12 F.3d at 1240.

There is nothing to suggest that Sharif will necessarily be persecuted because of her family. Her father is hiding from the Iranian government. But the record is clear that Sharif, as well as many members of her family, have lived in Iran for several years without being subjected to persecution. Sharif lost her job of choice and was unable to qualify to attend the Iranian university. But there is no evidence to suggest that these events occurred because of her family.

Sharif's claim of persecution because she is a "westernized woman," is equally unavailing.[3] Essentially, Sharif argues that she is one of many "westernized" Iranian women who wish to have the same choices and opportunities available to women in Western countries. She claims that if she is forced to return to Iran she will lose the freedoms that she enjoyed in the United States. We do not quarrel with Sharif's argument; no doubt she is correct. However, even assuming that "westernized women" as defined by Sharif are a cognizable social group—a proposition that is debatable at best—Sharif is still unable to demonstrate a reasonable fear of persecution because of her membership in that group. There is no evidence to suggest that Sharif is either unable or unwilling to comply with Iranian law when she returns to Iran. Sharif has no history of objecting to Iran's social code. Nor is there any evidence to suggest that Sharif will voice her opposition to Iranian law when she returns to Iran. On the contrary, the record is replete with evidence that Sharif has lived in conformity with Iranian law, and will continue to do so.

Sharif's inability to enjoy the freedoms enjoyed by American women does not equate with a threat of affirmative persecution by the Iranian regime based on Sharif's "pro-western" views. In fact, there is no evidence to suggest that the Iranian regime is even aware of Sharif's longing for American freedoms, let alone that the regime would demonstrate hostility toward Sharif if it was.

### Conclusion.

In the final analysis, Sharif simply prefers life in America to life in Iran. We are sympathetic to her position. However, our sympathy is not enough to save her from deportation. The BIA's determination is supported by substantial evidence. Sharif's petition to review the BIA's deportation order is

Denied.

---

3. To the extent that Sharif's claim is based solely on her gender, it also fails. The Ninth Circuit has concluded that persecution on account of gender is not included as a category allowing relief under § 101(a)(42)(A). *Fisher v. INS,* 79 F.3d 955, 963 (9th Cir.1996). Even if we were to go so far as to disagree with the Ninth Circuit and include gender under § 101(a)(42)(A), Sharif has not presented facts sufficient to succeed on such a claim.