**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 20 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

BORIS ZVIAGILSKY,

        Petitioner,

v.

IMMIGATION &
NATURALIZATION SERVICE,

        Respondent.

No. 98-9528
(BIA No. A70 574 282)
(Petition for Review)

---

**ORDER AND JUDGMENT** *

---

Before **PORFILIO** , **McKAY** , and **LUCERO** , Circuit Judges.

      Boris Zviagilsky petitions this court to review the final deportation order of

the Board of Immigration Appeals (BIA) which denied his requests for asylum

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

and for withholding of deportation. [1]  We exercise jurisdiction under 8 U.S.C. § 1105a(a) [2] and deny the petition.

Petitioner was born on May 28, 1933 in Kiev, Ukraine.  With the exception of a few years during World War II, he lived in Kiev until the age of fifty-nine. On November 20, 1992, petitioner entered the United States on business.  He rejoined his wife, who had previously emigrated to the United States, and, five days later, he applied for asylum.  Petitioner claimed that he had suffered persecution in Ukraine on account of his Jewish religion and nationality.  The INS denied his application and placed him in deportation proceedings.  Petitioner conceded deportability and again requested asylum, as well as withholding of deportation.

---

[1]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.   See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

[2]     Section 1105a was repealed by § 306(b) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009, which alters the availability, scope, and nature of judicial review in INS cases.  Because petitioner's deportation proceedings commenced before April 1, 1997, IIRIRA's permanent "new rules" do not apply to this case.  See id. § 309(a), (c)(1).  However, IIRIRA's "transitional rules" do apply, because in this case the agency's final order was filed more than thirty days after IIRIRA's September 30, 1996 date of enactment.  See id. § 309(c)(4).  The repeal of § 1105a is not effective in cases such as this one where the transitional rules are in effect.  See id. § 309(c)(1).

The Attorney General has discretion to grant asylum to an otherwise deportable alien who qualifies as a "refugee" within the meaning of 8 U.S.C. § 1101(a)(42)(A). See id. § 1158(b)(1). "[A] grant of asylum requires two steps." Kapcia v. INS, 944 F.2d 702, 706 (10th Cir. 1991). At the first step, the alien must establish that he is eligible for refugee status. See id.; 8 C.F.R. § 208.13(a) (placing burden of proof on asylum applicant to establish refugee status). If the alien establishes his statutory eligibility as a refugee, then in the second step the Attorney General applies her discretion to grant or deny asylum. See Kapcia, 944 F.2d at 708.

To establish refugee status, an asylum applicant must present specific facts establishing either that he previously was persecuted in his native country or that he has a genuine and reasonable fear of being persecuted if he returns there. Id. at 707. Further, the persecution must be "on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). If the applicant establishes that he is a victim of past persecution, then a presumption arises that the applicant has a genuine and reasonable fear of future persecution. See 8 C.F.R. § 208.13(b)(1)(i). The INS can rebut this presumption only "if a preponderance of the evidence indicates that since the time the persecution occurred, country conditions have changed such that the

-3-

applicant's fear is no longer well-founded." Nazaraghaie v. INS, 102 F.3d 460, 462 (10th Cir. 1996).

To be eligible for withholding of deportation, an applicant must satisfy a higher standard than that for asylum. The alien must "demonstrate a clear probability of persecution with objective evidence that it is more likely than not that . . . [the alien] will be subject to persecution upon deportation." Baka v. INS, 963 F.2d 1376, 1380 (10th Cir. 1992) (quotations omitted). Because the asylum standard is more lenient that the withholding of deportation standard, we will first consider whether the BIA erred in not granting petitioner asylum.

At the hearing before the immigration judge (IJ) in December 1994, petitioner testified through an interpreter about the mistreatment he suffered in Ukraine both as a child and an adult. He testified that he was verbally abused by students and some teachers while in grade school and was later denied admission to several institutions of higher learning because he is Jewish. During his three years in the Soviet Army in the late 1950s, petitioner was singled out for extra verbal and physical harassment because he is Jewish.

Despite the anti-Semitism inherent in the communist regime, petitioner was able to secure a job with a company called Rele and Automatic Systems before he was drafted into the army, and he was able to get his job back after he completed his military service. Once petitioner attained his degree from a technical school

he attended at night, the company promoted him to a technician and then to an engineer. Petitioner was not able to be promoted any further however, because he was unable to obtain the necessary security clearance. Petitioner testified that the paperwork for security clearances had to go through officials at the KGB and, as the head of the company's security office explained to him, they would never approve his clearance because he is Jewish. Petitioner was still working for Rele and Automatic Systems in November 1992, when the company arranged for him to come to the United States on a business visa to try to establish ties with American businesses.

Petitioner testified that under the communist regime, all religion in Ukraine was repressed. He said he could not worship openly or he would lose his job. During the break-up of the Soviet Union, Ukranian nationalism was on the rise and various organizations surfaced that openly campaigned against Jews and other nonethnic Ukrainians. Petitioner testified that after Ukraine gained its independence in 1989, the situation worsened. He began receiving harassing telephone calls from people in his huge apartment complex who told him he should leave Ukraine and leave his apartment for Ukrainians. Petitioner also had his mailbox vandalized; it was painted with anti-Semitic graffiti and set afire several times.

During 1992, petitioner was involved in several incidents in which he was verbally or physically assaulted. The first incident began with someone knocking on his apartment door and yelling at him and calling him names. The man was joined by others, who continued the tirade. Petitioner called the police, but when they arrived forty minutes later everyone had gone away. After the police left, the people returned and continued their harassment. One man eventually managed to break into petitioner's apartment, where he grabbed petitioner, forced him to his knees, and told him all Jews should be on their knees before Ukrainians. Petitioner fled into the hall, where he encountered an angry group of people who tried to hit him. Petitioner was able to get away and run to the police station. He prepared a written report of the incident for the police, but he was not able to identify the man who had broken into his apartment or provide any additional information about him. When petitioner returned to his apartment, he found that it had been vandalized in his absence. For the next few days, petitioner stayed with a friend of his who lived elsewhere in the city. Some time later, a police officer came to petitioner's apartment and told him he had been assigned to the case. The officer said he had not been able to discover the identity of the people involved and he asked petitioner to submit a written request that the case be closed. Petitioner refused.

In late August 1992, while on his way home from work, petitioner was accosted by two men outside his apartment building. Petitioner said he thought they lived in his apartment complex and he had seen them participating in political demonstrations for the RUKH party. The men began verbally harassing petitioner, telling him he should leave Ukraine because he was a Jew. Petitioner tried to walk away, but the men started to fight with him. Some people passing by pulled petitioner away from the men and he was able to escape.

Another incident occurred shortly before petitioner left Ukraine. He was riding on a bus when a woman asked him to move aside so she could get off. When petitioner failed to hear her request, she shoved petitioner, which caused him to fall into another passenger. The woman and the other passenger then berated petitioner for being a Jew and told him he should leave Ukraine. When petitioner got off the bus, he found a policeman and told him about the incident, but the policeman said his radio was broken and he could not call anyone.

Finally, a few days before he left Ukraine, petitioner received a threatening letter purporting to be from his "apartment building neighbors." Admin. R. at 100. The letter stated that they would continue to harass petitioner until he left the building and Ukraine and went "to your kikes in Israel." Id. The letter ended: "Didn't Bogdan Khmelnitsky and Hitler kill enough of you? Let Ukraine be

-7-

liberated!  Dearth [sic] to kikes and communists!  This is a final verdict without the right of appeal!"  Id.

In addition to his testimony, petitioner presented a lengthy affidavit from William Cohen, an attorney who is an expert on Soviet Jewry.  The INS, in turn, submitted a copy of the Country Reports on Human Rights Practices for 1993 relating to Ukraine, as well as a profile of asylum claims from Ukrainians, both of which were prepared by the Department of State.

Based on the evidence before him, the IJ concluded that petitioner failed to establish his statutory eligibility as a refugee.  Although the IJ found petitioner to be credible, he did not find the evidence established that petitioner had been persecuted in Ukraine or that he had a well-founded fear of being persecuted if he returned.  "[T]he discrimination and mistreatment he complains of are at the hands of private individuals and exist in all societies. . . .  The failure of a government to stop acts of hatred before they occur can hardly be viewed as persecution." Admin. R. at 36.  The IJ also found that although petitioner had been "victimized by hooligans on isolated occasions" since the break-up of the Soviet Union, "he had a long, stable career," his company sent him to the United States to do business on its behalf, and "[i]n recent years there has been no restriction on his ability to worship as he sees fit."  Id.  The IJ concluded that "if he returns to Ukraine, he has absolutely nothing to fear from the government.

He may have a fear of random violence (as do some residents of the United States). I do not believe the asylum laws are designed to grant refugee status under these circumstances." Id. Therefore, the IJ denied petitioner's requests for asylum and withholding of deportation, but granted him voluntary departure on or before April 1, 1995.

The BIA reviewed the record de novo, concluded that the IJ correctly analyzed the case, and adopted the IJ's decision as its own. Therefore, the sole basis for our review is the decision of the IJ. See Panrit v. INS , 19 F.3d 544, 546 (10th Cir. 1994). We review the IJ's determination of refugee status under a substantial evidence standard, which is extremely deferential. See INS v. Elias-Zacarias , 502 U.S. 478, 481 (1992); Ghaly v. INS , 58 F.3d 1425, 1431 (9th Cir. 1995). Petitioner bears a very heavy burden. To obtain a reversal, he must establish that the evidence not only *supports* a conclusion that he suffered persecution or has a well-founded fear of persecution, but *compels* it. See Elias-Zacharias , 502 U.S. at 481 & n.1. In other words, petitioner's evidence must be "so compelling that no reasonable factfinder" could find against him. Id. at 484.

As with many asylum cases, this one hinges on the question whether the mistreatment petitioner suffered in Ukraine arose to the level of persecution. Defining what constitutes "persecution" is, as one circuit has described it, "a most

elusive and imprecise task." Balazoski v. INS , 932 F.2d 638, 641 (7th Cir. 1991). We know that "persecution is an extreme concept that does not include every sort of treatment that our society regards as offensive." Ghaly , 58 F.3d at 1431 (quotation omitted); see also Fatin v. INS , 12 F.3d 1233, 1240 (3d Cir. 1993). Thus, "[d]iscrimination on the basis of race or religion, as morally reprehensible as it may be, does not ordinarily amount to 'persecution' within the meaning of the Act." Ghaly , 58 F.3d at 1431. Likewise, "persecution means more than harassment." Balazoski , 932 F.2d at 642. "[I]n order to be an act of persecution, the behavior in question must threaten death, imprisonment, or the infliction of substantial harm or suffering." Sharif v. INS , 87 F.3d 932, 935 (7th Cir. 1996). "Mere generalized lawlessness and violence between diverse populations, of the sort which abounds in numerous countries and inflicts misery upon millions of innocent people daily around the world, generally is not sufficient to permit the Attorney General to grant asylum . . . ." Singh v. INS , 134 F.3d 962, 967 (9th Cir. 1998).

The IJ found that the discrimination and harassment petitioner suffered did not arise to the level of persecution. We recognize, as petitioner argues, that shortly before the final agency decision was entered here, the BIA found that the various incidents related by another Ukranian Jew and his son "constitute[d] more than mere discrimination and harassment" and that "[i]n the aggregate, they

-10-

[arose] to the level of persecution as contemplated by the Act." In re O-Z & I-Z , Interim Dec. 3346 (BIA Apr. 2, 1998) (1998 WL 177674). The BIA's decision in that case is not inconsistent with the decision here, however, because the asylum applicants in In re O-Z & I-Z suffered more egregious treatment at the hands of their tormentors than petitioner has related here. We conclude that the IJ's finding that petitioner did not suffer persecution in Ukraine is supported by substantial evidence.

Likewise, the IJ's determination that petitioner does not have a well-founded fear of future persecution if he returns to Ukraine is supported by substantial evidence. The State Department reports submitted by the INS reflect that "[o]n the whole, Ukraine has handled potential inter-ethnic friction remarkably well." Admin. R. at 155. "Anti-Semitism has ceased to be government policy," id. at 156, and "Jews in Ukraine have expanded opportunities to pursue their religious and cultural activities," id. at 147. Admittedly, "the relaxation of controls over expression and behavior has led to some increase in popular manifestations of anti-Semitism," id. at 156, and many Jews have emigrated from Ukraine to Israel and the United States, but "Ukranian Jewish leaders have described the basic motivation for this exodus as economic," id.

As we note above, Elias-Zacarias imposes a heavy burden on appellants, under that jurisprudence we cannot say that the evidence before us compels a

-11-

conclusion that petitioner has a well-founded fear of being persecuted, as that term is defined by the cited precedents, if he returns. Therefore, we must uphold the agency's denial of petitioner's request for asylum.

Because petitioner was not able to establish a reasonable possibility of persecution under the more lenient standard for asylum, he cannot satisfy the more stringent standard required for withholding of deportation. See Castaneda v. INS, 23 F.3d 1576, 1578 (10th Cir. 1994). Therefore, we also uphold the agency's denial of petitioner's request for withholding of deportation.

The petition for review is DENIED.

ENTERED FOR THE COURT

Carlos F. Lucero
Circuit Judge