[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 29, 2005
THOMAS  K. KAHN
CLERK

No. 04-12709
Non-Argument Calendar
_____

Agency Docket No. A77-928-391

KOL KROI,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review from a Decision
of the Board of Immigration Appeals

_____

**(June 29, 2005)**

Before TJOFLAT, BIRCH and DUBINA, Circuit Judges.

PER CURIAM:

Kol Kroi seeks review of the Board of Immigration Appeals' ("BIA") order

affirming without opinion the immigration judge's ("IJ's") decision to deny him

asylum and withholding of removal under the Immigration and Nationality Act

("INA") and relief under the United Nations Convention Against Torture

("CAT"). For the reasons discussed below, we **DENY** Kroi's petition.

## I. BACKGROUND

On 15 June 2000, Kroi, a native and citizen of Albania, arrived in the

United States and applied for admission under the Visa Waiver Permanent

Program ("VWP").[1] Later, Kroi submitted an application for asylum, withholding

of removal, and CAT relief.

In his application for asylum and testimony before the IJ, Kroi claimed that

he suffered past persecution in Albania because of political opinions and

membership in the Albanian Democratic Party ("DP"). Additionally, he asserted

that he has a reasonable fear of future persecution upon return to Albania and that

he is eligible for withholding of removal and CAT relief. Kroi stated the

following specific facts. In 1997, a group of "communist criminals" stopped him

and demanded money to support the communist party. AR at 189. When he

refused to give them money, they threatened his life. In 1998, Kroi joined DP

because "Communists gangs and terrorists,and ex-Communist Party members" had

---

[1] The VWP authorizes the Attorney General to waive the entry document requirements for qualifying nationals of certain countries who are seeking temporary admission to the United States as nonimmigrant visitors. See INA § 217(a), as amended, 8 U.S.C. § 1187(a); 8 C.F.R. § 217 et seq.

taken over the Albanian government in 1997.  Id. at 131.  Kroi had no specific role

or job in the DP, but he attended meetings with friends, talked to people about the

DP, argued that Communists should not return to power in Albania, and

contributed to the party financially.  He also attended a demonstration after the

death of a DP member of parliament.

In April 2000, the Albanian police came to Kroi's house and took him to the

police station.  At the station, they told him that they were aware of his DP

membership and financial contributions and threatened to put him in jail if he did

not stop supporting the DP.  They also advised him to "become one of us" and to

"contribute to our party instead." Id. at 134.  Kroi understood that they meant the

Socialist Party ("SP") when they referred to "our party."  Kroi did not report this

incident because he feared he would be killed.  Kroi stated that two of his friends

who also had been  members of the DP were murdered because they refused to

contribute money to the communist mafia.

Two or three days after the incident with the police, people stopped him in

the street and demanded money.  They stated that they knew he went to DP

meetings.  When Kroi refused to give them money, they did not harm him.  A few

days later, armed masked men came to his house and demanded money.  They told

Kroi that they knew he gave money to the DP and that he needed to give the

3

masked men money to support the Communist Party. After the masked men threatened Kroi at his house, Kroi decided to leave Albania because he thought his life was in danger on account of his political involvement.

Since he left Albania, Kroi's family has informed him that police have returned to his house to look for him. Kroi believes he will be killed if he returns to Albania. At trial, Kroi intimated that his family in Albania had not been harmed or had any problems with the masked men since his departure.

In addition to his statements about the above incidents, Kroi presented the following documentary evidence: (1) his high school diploma, (2) employment records, (3) documents verifying his military service in Albania, membership in the Catholic Church, and membership in the DP, and (4) a 2001 article which mentioned Kroi and his DP membership and essentially reiterated the factual claims made in Kroi's application for asylum.

According to the U.S. Department of State's 2000 Country Report on Human Rights Practices in Albania, Albania is a republic with a multiparty parliament, prime minister, and president who was elected by parliament. The SP won 121 of 155 seats in parliament in the 1997 Albanian elections, which occurred "after a 5-month period of chaos and anarchy due to the collapse of pyramid schemes." Id. at 224. At the time of the report, untrained and unreliable

4

police officers posed one of the most severe threats to internal security. Although the government generally respected human rights, some problems were reported. The DP made credible claims that its members were harassed by the government, but there were no confirmed cases of political killings by the government. Although the Albanian Constitution stipulated against torture and brutal treatment, police officers abused suspects and arrested persons, and in 2000, more than 190 police officers were fired because of "incompetence, lack of discipline, or violations of the law," id. at 226. At the time of the report, the police continued to arrest and detain people arbitrarily.

According to the 2001 State Department Country Report on Human Rights Practices for Albania, the Albanian government has a poor human rights record, and the DP frequently reported that its members suffered harassment or dismissals from official positions for political reasons. On one occasion, a DP supporter was arrested and died in prison.[2] The DP accused the government of failing to investigate its allegations that more than 21 of its members, supporters, and officials had been killed between 1997 and 1999.

---

[2] In this instance, the medical examiners concluded that DP member's death was a suicide. His family and members of the DP did not believe that explanation. **(Id.)**

5

According to the 2001 State Department's Albania Profile of Asylum Claims and Country Conditions, it is highly unlikely that many applicants will have credible claims to political persecution. Albania has a coalition government led by the Socialist Party, but many applicants attempt to bolster their claims for asylum by alleging that a communist regime has returned to power. The Profile states that such claims are "contradicted by virtually all state actions." Id. at 217. Incidents of persons being targeted for persecution based on political grounds were very rare at the time of the report, while organized and amateur crime were much more prevalent. All political parties had been active throughout Albania with no pattern of mistreatment. "There [was] no post-Communist tradition of retribution against political leaders and few instances thereof." Id. at 218.

The IJ denied Kroi's application for asylum, withholding of removal, and CAT relief. After summarizing the evidence presented by Kroi, the IJ made the following findings: (1) Kroi's testimony was generally credible; (2) the conduct that Kroi was subjected to by the Albanian police did not rise to the level of past persecution; (3) Kroi failed to establish an objectively reasonable fear of future persecution; and (4) there existed no nexus between Kroi's DP membership and the extortion he suffered, given the widespread corruption in Albania. Stating that an alien who flees general conditions of violence and human rights violations in

6

his home country does not qualify for asylum, the IJ also found that neither Kroi nor his family was physically harmed and concluded that Kroi was not eligible for asylum. Additionally, the IJ determined that Kroi failed to demonstrate the higher burden needed for withholding of removal because he did not demonstrate eligibility for asylum. Finally, the IJ ruled that Kroi failed to show that a government official or someone acting under government consent or acquiescence would torture Kroi if he returned to Albania.

Kroi appealed to the BIA and argued that the IJ erred in (1) finding that he was not subject to past persecution because he was subjected to pain and suffering by Albanian police officers and because persecution need not be physical; (2) determining that his fear of future persecution is not objectively or subjectively reasonable; (3) concluding that there existed no nexus between the attempted robbery and his claim of past persecution on account of his political beliefs; (4) finding that his fear of harm upon return to Albania stemmed from general strife in the country rather than his membership in the DP or political beliefs; (5) ruling that there was no evidence that Kroi would suffer future persecution in Albania; and (6) refusing to withhold removal or grant CAT relief. The BIA affirmed the IJ's decision without opinion, pursuant to 8 C.F.R. § 1003.1(e)(4). Kroi filed this timely petition for review.

## II. DISCUSSION

On appeal, Kroi advances three main arguments. First, he contends that the extortion and police detention he suffered constitute past persecution on account of his membership in the DP and his political opinion. He argues that this past persecution establishes a presumption that he has a well-founded fear of future persecution if he returns to Albania, and that his fear is both subjectively and objectively reasonable in light of his experiences and the country conditions in Albania. Second, Kroi contends that the persecution he endured qualifies him for withholding of removal. Third, he avers that he is entitled to CAT relief because he will be subjected to torture by the government due to his political beliefs should he return to Albania.[3]

When the BIA summarily affirms the decision of IJ without an opinion, we review the IJ's decision as the final removal order. Sepulveda v. U.S. Attorney Gen., 401 F.3d 1226, 1230 (11th Cir. 2005) (per curiam). We review the IJ's factual determinations under the substantial evidence test, and we "must affirm the [IJ's] decision if it is 'supported by reasonable, substantial, and probative evidence

---

[3]Because Kroi's removal proceedings commenced after 1 April 1997, his case is governed by the permanent provisions of the INA, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). Gonzalez-Oropeza v. U.S. Att'y Gen., 321 F.3d 1331, 1332 (11th Cir. 2003) (per curiam).

8

on the record considered as a whole.'" Al Najjar v. Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir. 2001) (citation omitted). Because the substantial evidence standard is highly deferential, we can reverse the IJ's decision "only if the evidence 'compels' a reasonable fact finder to find otherwise." Sepulveda, 401 F.3d at 1230 (citation omitted). We review de novo the IJ's ruling to the extent that it is based on the interpretation of applicable statutes. Mazariegos v. U.S. Attorney Gen., 241 F.3d 1320, 1324 (11th Cir. 2001). With these standards in mind, we will address each of Kroi's claims in turn.

A.     Asylum

Any alien who arrives in the United States or is present in the United States may apply for asylum. See 8 U.S.C. § 1158(a)(1). The Attorney General has discretion to grant the alien's application if the alien qualifies as a "refugee" under 8 U.S.C. § 1101(a)(42)(A). § 1158 (b)(1). According to the statute, a "refugee" is

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

§ 1101(a)(42)(A) (emphasis added). The asylum applicant carries the burden of

9

proving that he meets this definition. See Al Najjar, 257 F.3d at 1284.

To establish asylum eligibility based on group membership or political opinion, the alien must, with specific and credible evidence, establish that he suffered past persecution on account of his group membership or political opinion, or that he has a "well-founded fear" of future persecution on account of his political opinion or group membership. 8 C.F.R. § 208.13(a), (b); accord Sepulveda, 401 F.3d at 1231. "Demonstrating such a connection requires the alien to present specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of such an opinion [or other statutory factor]." Al Najjar, 257 F.3d at 1287 (internal quotations and citation omitted) (emphasis in original). In other words, to obtain relief, an asylum applicant must show more than that he has a particular political opinion; he must show that he was persecuted because of that opinion. INS v. Elias-Zacarias, 502 U.S. 478, 483, 112 S. Ct. 812, 816 (1992).

1.     Past Persecution

Although the INA does not explicitly define "persecution," we have recognized that "[n]ot all exceptional treatment is persecution," Gonzalez v. Reno, 212 F.3d 1338, 1355 (11th Cir. 2000), that "persecution . . . requir[es] more than a few isolated incidents of verbal harassment or intimidation," and that "[m]ere

10

harassment does not amount to persecution." Sepulveda, 401 F.3d at 1231 (internal quotations omitted). As a general rule, "behavior . . . must threaten death, imprisonment, or the infliction of substantial harm or suffering" in order to qualify. See Sharif v. INS, 87 F.3d 932, 935 (7th Cir. 1996). "Threats alone generally do not constitute actual persecution; only rarely, when they are so immediate and menacing as to cause significant suffering or harm in themselves, do threats per se qualify as persecution." Vatulev v. Ashcroft, 354 F.3d 1207, 1210 (10th Cir. 2003); see also Sepulveda, 401 F.3d at 1231 (menacing telephone calls and threats did not constitute past persecution). Similarly, confinement and detention by the police do not necessarily constitute persecution. See Nelson v. INS, 232 F.3d 258, 264 (1st Cir. 2000) (three episodes of solitary confinement, each accompanied by physical abuse, did not constitute persecution); Kapcia v. INS, 944 F.2d 702, 704, 708 (10th Cir. 1991) (no persecution where alien was "arrested four times, detained three times, and beaten once"); Kubon v. INS, 913 F.2d 386, 388 (7th Cir. 1990) (brief confinement in opposition to totalitarian regime not necessarily past persecution).

In this case, we conclude that substantial evidence supports the IJ's finding that Kroi did not establish that he suffered past prosecution. First, the two to three hour detention by the police does not necessarily rise to the level of past

11

persecution. Kroi was not harmed physically, his detention was brief, and he was not charged with any crime. Second, the extortion attempts and threats, although unpleasant, do not necessarily constitute past persecution. Third, even if the conduct does rise to the level of persecution, the record does not compel a finding that Kroi was singled out for persecution on account of his DP membership. Particularly in light of the widespread crime and corruption in Albania, Kroi's testimony that alleged communists attempted to take money from him both before and after he joined the DP weakens any inference that he was targeted because of his political beliefs and affiliations. See Perlera-Escobar v. Executive Office for Immigration, 894 F.2d 1292, 1298-99 (11th Cir. 1990) (noting that we must affirm the BIA's decision that there exists no nexus between the harassment and a protected ground, even if other inferences about the tormentors' motives may be drawn, so long as substantial evidence supports the BIA's conclusion).

2.     Well-Founded Fear of Future Persecution

An applicant can establish a well-founded fear of persecution if (1) he has a fear of persecution in his country of origin; and (2) there exists a reasonable possibility that he will suffer persecution if she returns; and (3) he is unable or

unwilling to return to her country due to that fear.[4]  8 C.F.R. § 208.13(b)(2).  "An

applicant must demonstrate that his . . . fear of persecution is subjectively genuine

and objectively reasonable." Al Najjar, 257 F.3d at 1289 (internal quotation

omitted).  We have held that an imputed political opinion may form the basis for a

well-founded fear of persecution within the meaning of the INA.  Id. (internal

quotations and citations omitted).

We conclude that substantial evidence supports the IJ's finding that Kroi

did not demonstrate a well-founded fear of future persecution on account of a

protected ground.  As stated previously, the record does not compel a finding that

Kroi was targeted or will be targeted on account of his DP membership or political

opinion.  Accordingly, the IJ did not err in denying Kroi's petition for asylum.

B.      Withholding of Removal

An alien who seeks withholding of removal under the INA must

demonstrate that his "life or freedom would be threatened in [the country of

removal] because of the alien's race, religion, nationality, membership in a

particular social group, or political opinion."  8 U.S.C. § 1231(b)(3)(A); accord

Mendoza v. U.S. Attorney Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).  The alien

---

[4]Applicants who establish past persecution are presumed to have a well-founded fear of
future persecution.  8 C.F.R. § 208.13(b)(1)(ii).  Because Kroi has not established past persecution,
however, he is not entitled to this presumption.

must show that he "more-likely-than-not would be persecuted or tortured upon his return" to his country. Mendoza, 327 F.3d at 1287. As with an asylum claim, the alien must demonstrate some nexus between the alleged persecution or fear of persecution and one of the five protected grounds. See Perlera-Escobar, 894 F.2d at 1297 ("Even a clear probability that an alien's life is threatened without any indication that the basis of the threat is related to a statutorily enumerated ground is insufficient to establish eligibility for relief."). The standard for withholding removal is more stringent than the "well-founded fear" standard for asylum, and an applicant unable to meet the "well-founded fear" standard for asylum is usually unable to qualify for withholding of removal. See D-Muhumed v. U.S. Attorney Gen., 388 F.3d 814, 819 (11th Cir. 2004).

In this case, Kroi failed to meet the lower burden required to establish a "well-founded" fear of future persecution in Albania. Accordingly, he cannot meet the higher withholding of removal standard. We affirm the IJ's denial of Kroi's application for withholding of removal.

C.    Relief Under CAT

To obtain withholding of removal under the CAT's implementing regulations, an alien must establish that he "more likely than not" will be tortured upon return to his home country. 8 C.F.R. § 208.16(c)(2). "Torture" is defined as

14

any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

Id. § 208.18(a)(1). Because applicants seeking CAT relief must meet a higher burden of proof than applicants seeking asylum, those who cannot prove a "well-founded fear" to obtain asylum usually cannot prove entitlement to relief under CAT. See Najjar, 257 F.3d at 1303.

In this case, the record does not compel a finding that Kroi would be tortured by someone acting "at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1). Further, Kroi failed to demonstrate a "well founded fear" of future persecution upon return to Albania, and it thus follows that Kroi failed to show that it was more likely than not he would be tortured on account of a protected factor. Accordingly, the IJ did not err in denying Kroi CAT relief.

### III. CONCLUSION

Because substantial evidence supports the IJ's determination that Kroi is not entitled to asylum, withholding removal, or CAT relief, Kroi's petition is **DENIED**.