[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 23, 2005
THOMAS K. KAHN
CLERK

No. 05-10972
Non-Argument Calendar

_____

BIA Agency Nos.  A70-573-395 & A70-573-396

CONSTANZA MOTS,
TIBERIUS MOTS,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(November 23, 2005)

Before TJOFLAT, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

Petitioners, Tiberius Mots and Constanza Mots, his wife, are natives of Romania and citizens of Germany. They entered the United States on June 25, 1992, on a six-month tourist visa that expired on December 24, 1992. Because they overstayed their visit, the Immigration and Naturalization Service ("INS") commenced removal proceedings against them by filing Notices to Appear ("NTAs") on March 2, 1998.[1] At a hearing before an Immigration Judge ("IJ") on May 1, 1998, Petitioners admitted the allegations of the NTA.[2] On October 6, 1998, the IJ convened a hearing to entertain Petitioners' applications for asylum and withholding of removal under the Immigration and Naturalization Act ("INA"), 18 U.S.C. §§ 1101-1537. Petitioners presented the testimony of themselves and their two daughters, Christina and Andrea.[3]

Tiberius Mots is of "half" German ancestry. German is his language. He testified that he and his family emigrated from Romania to Germany in 1979. They lived first in Essen and then in Dusseldorf. After attending computer school, he worked part-time for three years; in 1987, he obtained a full-time job as a

---

[1] The INS has been superceded by the Department of Homeland Security ("DHS"). We refer to the agency intermittently as the INS or the DHS.

[2] They did not admit that they remained in the United States beyond December 24, 1992 without authorization, but their failure to admit as much is irrelevant for our purposes.

[3] According to the Government's brief, at page 6, Christina was initially a participant in these proceedings, but she is no longer a party. Andrea was granted asylum in another proceeding, and has never been a party in this case.

subway train driver. He held that job until leaving Germany for the United States in 1992. He explained that life was difficult for him and his family in Germany because they were considered foreigners and discriminated against for that reason. He was treated as such in part because his German accent is different from the accent prevalent where he lived and worked. Mots described two unpleasant experiences. In February 1989, two passengers on his train, whom he believed to be Neo-Nazis or "Skinheads," cursed him, calling him an "auslander," meaning a foreigner. They told him to leave Germany, but they did him no physical harm. He complained of the incident to his supervisor, who summoned the police. He complained because he was concerned about the increasing membership of the Neo-Nazi party and the prevalence of Skinheads—both are prejudiced against foreigners. In 1991, he had a dispute with a police officer about whether he had parked overtime at a parking place in front of his house. The officer asked him if he was German and gave him a ticket, saying that "auslanders have to pay for the money what they take from the welfare." This angered Mots, so he complained to the police department, which brushed him off by saying that the officer was overworked and that "everybody makes mistakes."

Mots attributed the above incidents to race and nationality. He said that he feared that if he returned to Germany, he would face more problems—including the ability to get work—because his accent is stronger now that he has been living

in the United States—in other words, he would appear more than ever to be a foreigner.

Constanza Mots described the jobs she held in Germany, from 1981 to 1992, when the family left for the United States. She also told of the increase of Neo-Nazism and the discrimination against foreigners. As for her and her family, the incidents of discrimination against them were few and of little consequence (for asylum purposes); in fact, for the thirteen years they lived in Germany, they suffered no harm.[4]

At the conclusion of the hearing, the IJ denied Petitioners' applications for asylum and withholding of removal. The IJ denied Petitioners asylum because they "failed to establish that they would be persecuted or that their fears for life or freedom if returned to Germany are because of their race, religion, nationality, membership in a particular social group or political opinion." And because Petitioners failed to satisfy the standard of proof for asylum, the IJ concluded that they "failed to satisfy the clear probability standard of eligibility required for withholding of removal." The IJ also concluded that Petitioners failed to show that they could not safely relocate within Germany. Finally, the IJ denied Petitioners' request for voluntary departure.

---

[4] The testimony of Christina and Andrea added little if anything to what their parents had to say.

On November 7, 2002, the Board of Immigration Appeals ("BIA") affirmed per curiam the IJ's decision as to asylum and withholding of removal, but remanded the case to an IJ for further consideration of Petitioners' request for voluntary departure. On August 21, 2003, the IJ denied their request because they admitted that, if granted the privilege, "they would not depart within the period of time granted by the Court or any extension of that date," and Petitioners appealed. The BIA affirmed the IJ's decision on January 31, 2005.

Petitioners now seek review of the BIA's decisions of November 7, 2002 and January 31, 2005. Reduced to their essentials, the issues their petitions present are as follows:

1. Whether the IJ's denial of their applications for asylum and withholding of removal are supported by substantial evidence;

2. Whether Petitioners were denied due process of law because the transcript of their removal hearing is incomplete.

Petitioners contend that the IJ's decision denying their applications for asylum is not supported by substantial evidence, as they testified to acts of persecution in Germany based upon their race and nationality. They say that the IJ's finding that they lacked a well-founded fear of persecution is inconsistent with the granting of the application for political asylum of their daughter Andrea on the same facts. In addition, having presented credible evidence of past persecution, they were entitled to the presumption of a well-founded fear of persecution.

5

When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Insofar as the BIA adopts the IJ's reasoning, as it did here, we review the IJ's decision as if it were the BIA's. See id. The BIA's factual determinations are reviewed under the substantial-evidence test, and we "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. at 1283-84 (internal quotations and citation omitted). The substantial evidence test is "deferential" and does not allow "re-weigh[ing] the evidence from scratch." Mazariegos v. Office of U.S. Att'y Gen., 241 F.3d 1320, 1323 (11th Cir. 2001) (internal quotations and citation omitted). "To reverse the IJ's fact findings, we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003) (considering withholding of removal claim). With these principles in mind, we turn to the denial-of-asylum and withholding-of-removal issues.

The Attorney General and the Secretary of the Department of Homeland Security ("DHS") have discretion to grant asylum if an alien meets the INA's definition of a "refugee." INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). A "refugee" is:

6

any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

8 U.S.C. § 1101(a)(42)(A). The asylum applicant carries the burden of proving statutory "refugee" status. Najjar, 257 F.3d at 1284. To establish asylum eligibility, the alien must, with specific and credible evidence, establish (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor will cause future persecution. 8 C.F.R. 208.13(a), (b); Najjar, 257 F.3d at 1287.

If the alien demonstrates past persecution, he is presumed to have a well-founded fear of future persecution unless the government can rebut the presumption. 8 C.F.R § 208.13(b)(1). If an alien does not establish past persecution, he bears the burden of showing a well-founded fear of future persecution by showing that (1) he fears persecution based on his membership in a particular social class, (2) there is a reasonable possibility that he will suffer persecution if removed to his native country, and (3) he could not avoid persecution by relocating to another part of his or her country, if, under all of the circumstances, it would be reasonable to expect relocation. 8 C.F.R. 208.13(b)(2), (3)(i). Additionally, "an applicant must demonstrate that his or her fear of

7

persecution is subjectively genuine and objectively reasonable." Najjar, 257 F.3d at 1289. According to persuasive authority, if an alien remains unharmed in his native country after allegedly suffering persecution, his or her fear of future persecution is diminished. Ngarurih v. Ashcroft, 371 F.3d 182, 189 (4th Cir. 2004).

Although neither the INA nor the regulations define "persecution," we have discussed other circuits' holdings that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (internal quotations omitted). To be an act of persecution, the behavior must threaten death, punishment, or the infliction of substantial harm or suffering. Sharif v. INS, 87 F.3d 932, 935 (7th Cir. 1996). "Threats alone generally do not constitute actual persecution; only rarely, when they are so immediate and menacing as to cause significant suffering or harm in themselves, do threats per se qualify as persecution." Vatulev v. Ashcroft, 354 F.3d 1207, 1210 (10th Cir. 2003). "To qualify as persecution, a person's experience must rise above unpleasantness, harassment, and even basic suffering." Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000).

An alien shall not be removed to a country if his life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion. INA § 241(b)(3), 8 U.S.C.

8

§ 1231(b)(3). The burden of proof is upon the alien to show his eligibility for withholding of removal. 8 C.F.R. § 208.16(b). An alien is entitled to withholding of removal if he can establish, with specific and credible evidence: (1) a past threat to life or freedom through proof of past persecution on account of his membership in a particular social group (or other statutorily listed factor), or (2) a future threat to life or freedom if it "is more likely than not" that his membership in a particular social group (or other statutorily listed factor) will cause future persecution. 8 C.F.R. § 208.16(b)(1),(2). Because this standard is more stringent than the standard for asylum, if an applicant is unable to meet the standard for asylum, he generally is precluded from qualifying for either asylum or withholding of removal. Najjar, 257 F.3d at 1292-93.

Substantial evidence supports the BIA's determination that Petitioners failed to establish either past persecution or a well-founded fear of future persecution, as the incidents they described did not rise to the level of persecution. Accordingly, the BIA correctly denied their applications for asylum and withholding of removal. We turn then to the incomplete-transcript issue.

Petitioners contend that "important testimony has been excluded" from the transcript of their removal hearing, as the notation "indiscernible" appears "at least 233 times throughout the record of [their] testimony." They argue that the omitted testimony would "likely . . . be helpful to this Court," as the gaps in their testimony

9

"might apply to [their claims of] past persecution and fear of future persecution." The petitioners urge that the matter be "remanded" for "de novo review.

Petitioners failed to exhaust their administrative remedies with respect to this due process claim. We therefore lack jurisdiction to entertain it, the result being that we dismiss their petition as to this issue.

PETITIONS DENIED in part; DISMISSED in part.